|                           |                      |   |
|---------------------------|----------------------|---|
| UNITED STATES             | 21-7153              |   |
| VS                        | 8:13-CR00363DKC-1    |   |
| GUADAGNOLI                |                      |   |

To whom it may concern,

My name is Megan Veitch, and I am writing this letter because I was just informed by his brother that my husband (separated and largely incommunicado) Joseph Guadagnoli's case is up for appeal, and I would like to contribute some pertinent information in regard to his person and facts therewithin, that I feel should be strongly considered.

First, I would like to take a moment to thank you for your time and consideration in reading this letter. Both Mr. Guadagnoli and I were charged, and plead guilty to, the Cultivation and Distribution of Marijuana. This letter is not to address that charge. I would, however, hope to clarify prior statements I made in regard to his charge of Possession of a Firearm while committing a felony.

To begin here, I think it's important to understand the type of area we were living in, and the wilderness that surrounded us. We were living on top of a hill, in Laytonville California, in a simple cabin whose only access was a ruddy dirt road, which took an hour to bring us to any main road. We were off the grid and deep, deep in the woods, living alongside all the wildlife one would expect in that area. It was not uncommon to see Bears, Feral Pigs, Predator Cats, and even poisonous Snakes on our property. Keep in mind, we were running a 300 plant marijuana farm, and Mr. Guadagnoli's primary job was the upkeep of these plants. His daily routine involved him keeping farmers hours, and being out on the land well before dawn, a time in which the wildlife would often be on our property. In one instance, Mr. Guadagnoli was chased by a 600 pound Feral Pig. Shockingly the pig absorbed an entire clip from a handgun and was only finally able to be put down by the use of a rifle. The reliance on these weapons, as in any situation where one lives in close quarters with wildlife, is paramount for self-protection.

With all that said, and a picture hopefully painted, there is another specific aspect I would like to address.

We had a worker who lived on site with us, that was mauled by a neighbors pitbull one day. The neighbors were widely known to use methamphetamine. The attack was truly serious and required a significant amount of medical care. After the attack, the employee asked Mr. Guadagnoli to bring him to town, so he could purchase a weapon for himself, to protect himself in case of any further animal encounters.

I mention this, because there is a specific moment in my testimony that I hope to clarify, as I feel it was taken out of context, and used against Mr. Guadagnoli by a skilled federal prosecutor.

While I cannot recall the exact question asked of me at the time, at one point I said something to the effect of "…for protection from the tweekers…", in regard to the aforementioned weapons. I feel this was taken to mean that Mr. Guadagnoli possessed these weapons with plan to use them against other humans. This cannot be further from the truth. I colloquially said "the tweekers" in reference to the story I outlined above. We were neighborly with these people and had no reason to fear them. Their dog, however, was a nuisance and the day of his attack on our friend was still very fresh on my mind. In saying "the tweekers", I meant the kind of situation that could come from the lack of responsibility shown by these people in how they run their lives and how they keep their pets (plural, there were many untrained, aggressive, unchained pitbulls on their property). To be as absolutely clear as possible, Mr. Guadagnoli had no intent or desire to ever use a weapon against another human, ever.

To speak to Mr. Guadagnoli's character, I would like to say he is a very kind, loving man. He is a father of 4, who home schooled his son with nonverbal autism, while managing his daughters type 1 diabetes. His situation lead him to a place in the deep woods of northern California, a land foreign to him an.d fraught with danger. He did what every other farmer in remote, dangerous locations have done, for generations before him, and secured his property and home with firearms. While I will not attempt to defend our chosen path as marijuana cultivators, I simply cannot allow him to approach this appeal with what I feel is anything less that the clearest picture, and most accurate information available. I strongly feel he is of no danger to anyone else or himself, and hope this is reflected in the pursuit of his appeal, as well.

I thank you so much for taking the time to read this letter. May it paint that clearest picture, and may it influence your decision in how the next years of a non-violent drug offenders life plays out.

Respectfully,
Megan Veitch
*[signature]*

Sworn before me this 30th day October 2021.
Dana L. Cohen
Comm. expires 7/1/2027

